John C. STANLEY, III, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. EC 76–66–K.

United States District Court, N. D. Mississippi, E. D.

June 15, 1977.

**582**

James E. Price, Corinth, Miss., for plaintiffs.

H. M. Ray, U. S. Atty., Oxford, Miss., Jack D. Warren, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this action, plaintiffs John and Imogene Stanley seek refund of alleged overpayment of their federal income tax for the calendar years 1971 and 1972. The cause is before the court on cross-motions for summary judgment.

Plaintiffs' claim is based on the contention that in the above years they were entitled to taxation of liquidating dividends attributable to certain shares of stock of King & Stanley Company, Inc. (K & S), as long-term capital gains, and not as short-term capital gains as determined by the IRS. Crucial to plaintiffs' contention is the date on which John Stanley began to "hold," in a 26 U.S.C. § 1222(3) sense,[1] two K & S convertible debentures subsequently converted, tax-free, into the above-mentioned stock.[2]

The debentures in question are two (No. 2 and No. 3) of a series issued by K & S on October 1, 1963, bearing interest at the rate of six per cent per annum payable in cash, maturing on October 1, 1971 (or earlier at holder's option), with principal payable only in K & S common stock with a par value of $100 per share. No. 2 was purchased by Stanley's mother at its par value of $10,000; No. 3 was purchased by Stanley's cousin at its par value of $15,000.

On the date of purchase of the debentures, Stanley executed agreements with his mother and cousin in which it was agreed that upon maturity (or earlier at his option), he would purchase the debentures at their par value, plus any accrued and unpaid interest thereon at the time of purchase. Both debentures were endorsed to indicate that they were subject to "an agreement" between the registered owners and Stanley, and that any negotiation of the debentures would be subject to such agreement.

Stanley's mother and cousin remained the owners of their respective debentures, and collected interest thereon, until August 30, 1971, at which time Stanley purchased the debentures for their par value, and endorsed the fact of such purchase on his agreements with his mother and cousin. The following day, Stanley converted the debentures into 250 shares of K & S common stock, and within six months thereafter—on November 19, 1971 and February 11, 1972—received the liquidating dividends whose taxable nature is the subject of this action.

---

1. Section 1222(3) in pertinent part provides: The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than [six] 6 months .. . ..

2. The parties agree that under 26 U.S.C. § 1223(1), the holding period of these debentures can be tacked onto the holding period of the stock.

Both parties to this action recognize that "holding" of property in a § 1223(1) sense is not equivalent to holding legal title, *Fletcher v. United States,* 303 F.Supp. 583 (N.D.Ind.1967), aff'd per curiam, 436 F.2d 413 (7th Cir. 1971); but that possession, as a practical matter, of the benefits and burdens or incidents of ownership alone may commence the holding period, *Ted. F. Merrill,* 40 T.C. 66 (1963); *see Boykin v. Commissioner,* 344 F.2d 889 (5th Cir. 1965). Plaintiffs contend that Stanley's execution on October 1, 1963, of the agreements to purchase the debentures at maturity conferred on Stanley such benefits and burdens of ownership as to commence his holding period for the K & S stock under consideration on October 2, 1963. The government, on the other hand, contends that Stanley's holding period did not begin until August 31, 1971, the day after he actually purchased the debentures.

We agree with the government. The sole attribute of ownership which plaintiffs claim vested in Stanley upon execution of the agreements to purchase debentures No. 2 and 3 was the risk of loss or chance of gain in the market value of K & S common stock by maturity date of the debentures. Stanley's mother and cousin, however, as owners of the debentures, until August 30, 1971 received the most direct benefit of ownership, *viz.* interest payments. They also were free to negotiate the debentures, albeit subject to their agreements with Stanley, and they likewise were free to use the debentures as security for other financial transactions. The most immediate burdens of ownership of the debentures similarly fell on Stanley's mother and cousin, i. e., it was their capital which was tied up in the debentures for eight years at a fixed rate of return, and it was they who were obligated to pay taxes on such return.

When "we take a practical look at the transaction . . .—at what the parties did—and from that reach a decision as to whether the Taxpayer in question possessed *sufficient* of the accouterments of ownership—usually styled the benefits and burdens—to justify the conclusion that he

'held' the property in excess of six months," *Boykin v. Commissioner,* 344 F.2d 889 (5th Cir. 1965) (emphasis added), we are unable to justify such a conclusion here based on the single tentative incident of ownership of the debentures possessed by Stanley prior to August 31, 1971.

In sum, we conclude that plaintiffs were not entitled to long-term capital gain taxation of the income in question, and that the United States is therefore entitled to entry of judgment as a matter of law. An order will be entered accordingly.